[Crim. No. 5908.   Second Dist., Div. Two.   Oct. 18, 1957.]

THE PEOPLE, Respondent, v. ALBERT BARQUERA, Appellant.

Robert T. Baca for Appellant.

Edmund G. Brown, Attorney General, Herschel T. Elkins and William E. James, Deputy Attorneys General, for Respondent.

MOORE, P. J.—Having been convicted of possessing heroin (Health & Saf. Code, § 11500) and of a previous conviction of the same offense, defendant appeals. At the trial, the action was submitted on the transcript of the preliminary hearing with the stipulation that both the People and defendant. might present additional evidence.

Testimony was introduced on the issue of the legality of the arrest and the search and seizure which followed it. Appellant's motion to suppress the evidence was denied and his objection to the introduction of evidence was overruled. Also, evidence was presented on the question of guilt or innocence.

After conviction, both the motion for a new trial and for probation were denied and he was sentenced to state prison for the term prescribed by law.

. He now contends that (1) hearsay evidence was admitted on the issue of his guilt; (2) he was denied the right to cross-examine witnesses in that the court would not allow a disclosure of the name of the confidential informant; (3) the evidence taken from his apartment had been unlawfully seized; (4) he did not receive a fair trial because the court had formed an opinion of his guilt before his defense was presented.

Officer Cohen of the Los Angeles Police Department was advised by a reliable, confidential informant that a masculine young Mexican, neatly dressed in sport clothes and approximately 5 feet 7 inches tall, sold and kept narcotics in his apartment on North Grand Avenue in Los Angeles. Within an hour after receipt of such information, the officer and his partner drove by the designated address when they saw one Berru, known to Officer Cohen as a narcotic addict, stepping out of the apartment house doorway in company with appellant. Cohen left the police car, approached the young Mexican and Berru on the sidewalk and asked to converse with them. They ran at once along the space between the apartment house of appellant's home and the edifice to the south of it and the officers pursued and apprehended the fugacious pair and

placed them under arrest. Berru and appellant were taken to a parking lot in the rear of the apartment house and there searched. Appellant was then taken to the manager of the apartment house. She told the officers that appellant lived in apartment 21 and gave them the key to it. Officer Cohen testified that he then said to appellant: "We should search your residence," to which appellant replied: "All right." Appellant testified he did not give the officers permission to search the apartment. It was stipulated that the manager would testify that appellant said nothing to the officers in her presence; that he started to say something and that the officers told him to "shut up." In searching the apartment, the officers found in a crevice beneath a table, a latex bag which contained heroin. At first Barquera denied ownership of the bag, but, according to the officers, he subsequently stated that he had purchased the narcotic in Mexico and that when arrested he was on the way to buy heroin; that none of it belonged to his wife but that it all belonged to him. On the day of the arrest, the officers had neither warrant for the arrest of appellant nor a warrant to search his home.

Appellant contends that he was prejudiced by the court's refusal to allow him to cross-examine the officer with respect to the name of the confidential informant. In view of the conclusions derived, it is unnecessary to decide this question on the basis of the present record. Neither is it necessary to conclude whether the arrest of appellant and the searches which followed were legal. Appellant did not receive the fair trial guaranteed to him by the Constitution of this state in that the trial court let it be known that it had formed an opinion of appellant's guilt[1] prior to the time appellant presented his defense. After denying appellant's motion to suppress the evidence of the People, the judge said: "You have got admissions here by the defendant. I am not

---

[1] "THE COURT: For the purpose of argument, I will concede that the man is under arrest, that his consent being voluntary is very questionable. I don't think this man, the traffic he was in, was going to consent to anything.

"Your motion is denied.

"Now, I have had about enough for today. It is 4:00 o'clock, gentlemen. How much longer is the case going to take?

"MR. McGINLEY: Do you have any further cross examination of the officers, Mr. Baca?

"MR. BACA: Yes, I do.

"MR. McGINLEY: As to which officer?

"MR. BACA: As to Sergeant Cohen, I mean Officer Cohen.

"THE COURT: What is the nature of your defense, Counsel?

"MR. BACA: The nature of the defense is that the narcotics which were

going to take his word against the police officer. I certainly wouldn't believe that last character that was on the stand.

found in the apartment did not belong to the defendant and he had no knowledge of their existence there, your Honor.

"THE COURT: Can we stipulate that if the defendant were called that he would so testify?

"MR. BACA: Yes, your Honor.

"MR. MCGINLEY: I will so stipulate.

"MR. BACA: We also have the testimony of the other witness, Mr. Berru, to the effect that the narcotics found there and presented in evidence were his, your Honor.

"THE COURT: Can we have a stipulation that if Mr. Berru were called back that he would testify that those were his narcotics?

"MR. MCGINLEY: So stipulated.

"MR. BACA: And there is——

"MR. MCGINLEY: Do you so stipulate to that?

"MR. BACA: Yes, I will stipulate to that.

"THE COURT: All right. Now, is there anything more?

"You have got admissions here by the defendant. I am not going to take his word against the police officer. I certainly wouldn't believe that last character that was on the stand. I don't care what he testified to. I don't think you have got any defense, Counsel.

"MR. BACA: Your Honor——

"THE COURT: I don't want to preclude you from putting it on, but there is no use wasting a lot of time here. You submitted it on the preliminary. I have read the preliminary. The man has no defense. He admitted the stuff was his.

"MR. BACA: Your Honor——

"THE COURT: If you have got any new evidence, I will let you put it on, but there is no use of rehashing the old stuff.

"MR. BACA: I would like to show the reason for his admission, your Honor.

"THE COURT: The reason for his admission?

"MR. BACA: Yes, and what he actually said.

"MR. MCGINLEY: Do you want to put that on tomorrow morning?

"THE COURT: I have a half a dozen matters.

"Put him on the stand for that purpose and we will find out.

"Take the stand.

"MR. BACA: Very well.

"MR. MCGINLEY: The People rest. Have you concluded your cross examination of Officer Cohen?

"MR. BACA: I don't know how this is going.

"THE COURT: It isn't going very good, that's for sure.

"MR. BACA: I am precluded from offering a defense.

"THE COURT: I am not precluding you from offering a defense. I don't think you have got one. I read the preliminary. It was submitted on the preliminary. I am going to allow you to offer additional evidence, a reasonable amount. I don't have to let you offer any.

"I don't think you have got any defense. The man admitted the stuff was his and it was found there, and I am not going to believe that associate of his in contrast to the police officers. It is just that simple.

"I have cut you a little short, but there is no use spending two or three hours of time putting a lot of evidence on that I don't think is credible.

"MR. BACA: Well, it was my understanding, your Honor, when we

I don't care what he testified to. I don't think you have got any defense, Counsel . . . I am not precluding you from offering a defense. I don't think you have got one. I read the preliminary. It was submitted on the preliminary. I am going to allow you to offer additional evidence, a reasonable amount. *I don't have to let you offer any.*" (Emphasis ours.)

The case was before the court under the following stipulation: "that this case may be submitted to the Court upon the testimony taken at the preliminary hearing with the same force and effect as though those witnesses were called, sworn and testified under oath at this trial; that all stipulations entered into at the preliminary be entered into at this trial; that the exhibits received in evidence at the preliminary be received in evidence at this trial; that counsel reserves all objections; *that both sides reserve the right to produce additional evidence.*" (Emphasis added.)

It is obvious from the emphasized portion of the stipulation that the court was in error in stating to appellant's counsel: "I don't have to let you offer any." This unfortunate remark, coupled with the court's repeated statements that appellant had no defense, clearly indicates that the court had prejudged appellant prior to the time for him to present his defense. ▪ It is a cardinal principle of criminal law that an accused is presumed to be innocent until proved guilty beyond a reasonable doubt, and that this presumption goes with him through the trial. (Pen. Code, § 1096.)

At the time of such remarks, the court had read the transcript of the preliminary hearing *at which appellant offered no defense.* It had also the additional testimony pertaining *solely* to the question of the legality of the arrest and the search and seizure. This latter evidence so far as it constituted hearsay, should not have been considered by the court on the question of guilt or innocence. ▪ The question of the

---

submitted the case, that we would be allowed to present a defense in the nature of additional evidence.

"THE COURT: I am giving you that opportunity. You have got some stipulations here as to what your additional evidence is, Counsel.

"I have asked you what your defense is, Counsel, and you have indicated it to me, and I have indicated how I viewed it. I am not going to preclude you from putting it on.

"MR. BACA: There is no use in putting it on if your Honor has already made up your mind.

"THE COURT: I made up my mind that I wouldn't believe that last character that was on the stand here as opposed to the testimony of the police officers, period. This man has testified that it wasn't his. If you want to show something as far as his admissions are concerned, I will certainly hear that."

legality of a search should be tried by the court in the absence of the jury for the reason that ''the legality of a search or seizure will frequently depend on whether the officer had reasonable cause to make an arrest, and since such cause is not limited to evidence that would be admissible at the trial of the issue of guilt . . . evidence that was otherwise inadmissible and prejudicial would frequently be presented to them if the jury were required to pass on the legality of the search and seizure.'' (*People* v. *Gorg,* 45 Cal.2d 776, 781 [291 P.2d 469].)

The same rule applies to the trial of a criminal cause without a jury. If evidence is taken solely on the question of the legality of the arrest and the search and seizure which followed, such evidence must not be considered at the trial to decide guilt or innocence prior to the time defendant has had an opportunity to present his defense. Yet in the instant case it appears that the trial court had before it only the testimony of the State's witnesses at the preliminary hearing and also the evidence introduced solely on the question of legality of the arrest and search, yet it reached the conclusion that appellant *had no defense.* This is not in accordance with the traditional concept of a fair trial to which an accused person is entitled, however guilty he may appear.

The classical language of Mr. Justice McFarland may with advantage be here invoked: ''These alleged errors could and should have been avoided; but criminal cases are too often conducted upon the preconceived theory that defendant is guilty, and that if he be given a fair trial, according to the established rules of evidence, *the jury may not convict him.* . . . The purpose of a criminal trial is to discover and determine whether or not a defendant is guilty; not merely to maintain, at all hazards, a theory of guilt entertained beforehand by any one man or any community of men.'' (*People* v. *Shaw,* 111 Cal. 171, 174 [43 P. 593].)

Had this been a jury trial and had the court expressed an opinion in the course of trial in presence of the jury that appellant had no defense, not a voice would be lifted to declare that no prejudicial error had been committed. Juries are daily admonished not to form an opinion or reach a conclusion until the case is finally submitted to them. Why should a judge, sitting in place of a jury, not be subject to the same admonition? The silent and mysterious, if not mystical, processes of the mind are likely to be swayed and prejudices derived by the very utterance of its own words. It therefore behooves him who holds the scales of justice to refrain from

suggestions or comments that are calculated to defeat the search for truth. ▋ When a judge becomes a trier of fact as well as of the law, the defendant is entitled to the same presumption of innocence and the same right to present a defense that he would have if he were being tried by a jury. In the instant controversy, the judge without specific intention to do harm deprived defendant of such rights.

▋ Even though the evidence may point to appellant's guilt, he is still entitled to a fair trial. "It is the bounden duty of courts to insist that a defendant be fairly convicted, because if he is not so convicted he should not be convicted at all; and to hold otherwise would be to provide ways and means for the conviction of the innocent. The fact that the evidence may point rather conclusively to defendant's guilt does not take from the latter his right to such a fair and impartial trial." (*People* v. *Lapin*, 138 Cal.App.2d 251, 264 [291 P.2d 575].)

When court reconvened the morning following the proceedings set forth in the footnote, appellant's counsel moved for mistrial "on the ground that the Court has indicated that it has made up its mind as to the guilt of the defendant here, or at least has made up its mind what witnesses he will believe and what witnesses he will disbelieve." The court replied: "I don't think I have any right to do that." In this respect the court was correct. Then followed this colloquy between court and counsel: "Your Honor, I don't know if you have or not, but I know that if it were a jury trial and—— THE COURT: This doesn't happen to be a jury trial . . . I have indicated that I wouldn't believe one of your witnesses and I still say I wouldn't. You can put him on if you want to. MR. BACA: The Court has also indicated that it would believe the officers before it would believe the defendant, and also—— THE COURT: Put him on. I will do the weighing. The motion for mistrial is denied."

Such conduct on the part of a trial court is not to be condoned, despite the absence of a jury.

Judgment reversed.

Fox, J., and Ashburn, J., concurred.